**Jimmy Borunda**
Attorney at Law
AZ Bar No. 019683
830 North 1st Avenue, Suite 208
Phoenix, Arizona 85003
Phone 602-253-0702
Fax 602-254-6677
Jimmy.Borunda@azbar.org

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Alex De La Fuente, a minor, by and through his parent Esther De La Fuente, and on her own behalf,<br><br>Plaintiffs,<br><br>vs.<br><br>Roosevelt Elementary School District No. 66, a political subdivision of the State of Arizona; Jeanne N. Koba, an individual; Jonathan Moore, an individual; Freddy Montoya, an individual; Cynthia Bernacki, an individual; and Brent Russell, an individual.<br><br>Defendants. | No. _____<br><br>**COMPLAINT**<br><br>(Demand for trial by jury) |

Plaintiffs Esther De La Fuente, on her own behalf and as parent of Alex De La Fuente, by and through counsel undersigned, for their Complaint against Defendants named herein, allege as follows:

## **PARTIES, JURISDICTION AND VENUE**

1. Plaintiff Esther De La Fuente is the parent of Alex De La Fuente, a minor at all

1

relevant times pertaining to this Complaint.

2. Defendant Roosevelt Elementary School District No. 66 (District) is a duly organized public school district located and operating within Maricopa County, Arizona, and as such, is a political subdivision and separate governmental entity of the State of Arizona.  The District was the individual Defendants' employer at the time of the events out of which these causes of action arise.

3. Defendant Jeanne N. Koba is an individual and she is the assistance superintendent of the District and its Section 504 Compliance Officer at the time of the events out of which these causes of action arise.  She is named in her official and individual capacities.

4. Defendant Jonathan Moore is an individual and he was the principal of the District's Bernard Black Elementary School at the time of the events out of which these causes of action arise.  He is named in his official and individual capacities.

5. Defendant Freddy Montoya is an individual and the assistance principal of the District's Bernard Black Elementary School at the time of the events out of which these causes of action arise.  He is named in his official and individual capacities.

6. Cynthia Bernacki is an individual and the 504 Coordinator of the District's Bernard Black Elementary School at the time of the events out of which these causes of action arise.  She is named in her official and individual capacities.

7. Defendant Brent Russell is an individual, and a teacher at the District's Bernard Black Elementary School at the time of the events out of which these causes of

action arise. He is named in his individual capacity.

8. Venue and jurisdiction of this action are proper in this Court as the events out of which these causes of action arise occurred in this judicial district, and the causes of action set forth below arise under the laws of the United States.

## GENERAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

9. Alex De La Fuente was a student at Bernard Black Elementary School (School) during the 2012-2013, 2013-2014, and 2014-2015 school years.

10. Bernard Black Elementary School is a public school operating within the District that receives federal financial assistance.

11. On November 2, 2012, the School's and/or District's administrators conducted a meeting to evaluate a potential Section 504 Plan[1] (504 Plan) for Alex when he was in sixth grade.

12. Subsequently, the School's and/or District's administrators recognized Alex had a disability – Attention Deficit Hyperactivity Disorder (ADHD) – for which he required an accommodation.

13. The School psychologist reviewed a psychological assessment for Alex on February 25, 2013.

14. The Section 504 Evaluation indicated Alex's "ADHD adversely impacts his ability to receive instruction and consequences which impacts his learning."

15. Further, the Evaluation indicated Alex's disability substantially impaired a major life

---

[1] A Section 504 Plan is pursuant to the Section 504 of the Rehabilitation Act of 1973 and its implementing regulations at 34 C.F.R. Part 104.

3

activity. i.e., "learning," because he "struggles with completing work and accepting consequences/redirection," and his impairment substantially impacts "his ability to function in the general education setting without accommodation."

16. The Evaluation concluded Alex required a 504 Plan for his educational needs to be met as adequately as those of his non-disabled peers because his disability would have an effect on his behavior and he required an accommodation.

17. The Evaluation also concluded Alex's disability could cause him to violate school rules, and thus, he would require an accommodation in discipline to ensure compliance with school rules.

18. On March 8, 2013, the School's and/or District's 504 team created a 504 Plan for Alex that the administrators would reevaluate in March of 2014.

19. The team consisted of Alex's general education teacher, the School nurse, Defendant Cynthia Bernacki (acting as the School's 504 Plan coordinator), and Alex's mother.

20. Alex's 504 Plan included these accommodations: (1) shortening Alex's homework assignments; (2) testing Alex in small groups or 1 on 1 instruction and allowing testing at different times of day or in several shorter sessions; (3) nursing services for daily medication administration; (4) providing intermittence for longer projects/assignments to ensure completion; and (5) for his behavior, utilizing a point sheet whereby Alex could earn rewards or be asked to complete character building lessons.

21. The 504 Plan also required a Section 504 Link Determination Meeting and

completion of an accompanying form before Alex was subjected to disciplinary action which changed his placement or when the total number of days of suspension totaled 10 days or more in a school year.

22. The School and/or District distributed the completed 504 Plan to the team, the School psychologist, and the School and/or District administration, including Defendants Jeanne N. Koba, Jonathan Moore, and Freddy Montoya.

23. The 504 Plan Distribution Notice stated:

> It is imperative that the accommodations as written in the Section 504 Plan be fully implemented to be in compliance with District policy and Section 504, a federal law that establishes protections for students with disabilities.
>
> ….
>
> Be aware that, under federal law, personal civil rights suits may be filed on behalf of students against individual District employees who fail to comply with the law and mandates set forth under Section 504. In addition, failure to comply with Section 504 law regarding the implementation of a Section 504 plan or the disregard of the protected rights of a student with disabilities may result in a complaint investigation and ruling by the United States Department of Education, Office for Civil Rights (OCR).

24. The 504 Plan included a projected re-evaluation date of March 8, 2014.

25. Pursuant to the 504 Plan, Alex received testing accommodation during the end of the 2012-2013 school year.

26. At the start of the 2013-2014 school year, the School psychologist asked Alex's seventh grade homeroom teacher to share Alex's 504 Plan with other members of the seventh grade team.

27. Upon information and belief, Alex's 504 Plan was not shared with other members of

the seventh grade team.

28. The District, Jeanne N. Koba, Jonathan Moore, Freddy Montoya, and Cynthia Bernacki did not reevaluate Alex's 504 Plan in March of 2014 or at any subsequent date.

29. The District, Jeanne N. Koba, Jonathan Moore, Freddy Montoya, and Cynthia Bernacki did not implement Alex's 504 Plan during the 2013-2014 or the 2014-2015 school years.

30. Further, the District, Jeanne N. Koba, Jonathan Moore, Freddy Montoya, and Cynthia Bernacki did not exit Alex from 504 Plan services at any time after creation of his 504 Plan.

31. During these two school years, the School and/or the District, Jeanne N. Koba, Jonathan Moore, Freddy Montoya, and Cynthia Bernacki received multiple reports from Alex's teachers concerning his behavior.

32. On December 4, 2013, the School, Jonathan Moore, and/or Freddy Montoya disciplined Alex after he stuck a paperclip into an electrical socket.

33. On February 28, 2014, Alex's science teacher wrote in an email to the School social worker and psychologist about concerns that Alex's behavior had become "extremely unpredictable…I know he was a little hard to mange before, but this has become ridiculous…Please help."

34. Upon information and belief, Jonathan Moore and Freddy Montoya did not take any action in response to the teacher's concerns.

35. During the 2014-2015 school year, Alex received at least 30 minor and 11 major disciplinary referrals resulting in 14.5 days of in-school suspension and 15 days of out-of-school expulsion from Jonathan Moore and Freddy Montoya.

36. The District's Section 504 Manifestation Determination Form states it is to be used "before a student who has a Section 504 Plan is subjected to a disciplinary action which changes placement (disciplinary opportunity transfer/recommendation for expulsion) or when the total number of days of suspension in a school year totals 10 or more days."

37. Jonathan Moore and Freddy Montoya suspended Alex for seven days from December 11 through December 19, 2014.

38. Jonathan Moore issued a Notice of Student Suspension stating "[i]t will be necessary to meet with you prior to your child's return to class. Your appointment has been scheduled for will set up to coincide with possible 504."

39. The "possible 504" meeting referenced in the Notice did not occur.

40. Additionally, Jeanne N. Koba, Jonathan Moore, Freddy Montoya, and Cynthia Bernacki did not complete a manifestation determination or hold a similar meeting for any of Alex's suspensions or expulsions.

41. Alex was a student in Defendant Brent Russell's School classroom on May 6, 2015.

42. Upon information and belief, the District had hired Russell for a long-term substitute teaching position at the School in November of 2014.

43. The District had retained Russell in the long-term substitute teaching position at the

7

School to, and including, May 6, 2015.

44. As Alex entered Russell's classroom on May 6, 2015, for instruction, he engaged in some "horse play" with fellow students.

45. Initially, Russell verbally confronted Alex and requested Alex cease the "horse play."

46. When Alex ignored Russell's request, Russell physically confronted Alex, and then Russell violently pushed Alex away.

47. Russell moved back towards Alex after pushing him away, and Russell bumped his chest against Alex's chest.

48. Upon information and belief, Russell verbally baited Alex to physically confront him.

49. After a short exchange of shouting between Alex and Russell, Russell grabbed Alex in a head lock and threw him to the floor of the classroom.

50. Alex returned to his feet while Russell continued to verbally abuse and bait Alex while standing directly over Alex.

51. After Alex returned to his feet, Russell wrestled with Alex while both were standing.

52. Russell then grabbed Alex again and violently threw him to the classroom floor while one or both struck desks in the classroom.

53. After throwing him to the floor, Russell physically restrained Alex against the floor for a significant period of time by pressing his left-hand against the back of Alex's neck.

54. Eventually, Alex broke fee of Russell's restraint and fled the classroom.

55. On June 16, 2015, Alex's mother filed a complaint with the Department of Education's Office of Civil Rights (OCR) alleging the School discriminated against Alex on the basis of his disability.

56. The OCR investigated the complaint and whether the District failed to provide Alex a free and appropriate public education (FAPE) by failing to implement his 504 Plan, and whether the District failed to provide Alex a FAPE by failing to reevaluate him prior to initiating a significant change in placement.

57. In its July 31, 2015, response to a request from the OCR for Alex's 504 Plan, the District incorrectly stated Alex "has never had a Section 504 Plan. He has never been classified as a student with a disability and has never been referred for an evaluation for a Section 504 Plan."

58. In its response to the OCR request for documentation demonstrating the implementation of Alex's 504 Plan, the District, again, incorrectly responded "that no such documents existed because [Alex] never had a 504 Plan."

59. On February 8, 2017, the OCR issued the results and conclusions of its investigation.

60. The OCR concluded the District failed to implement Alex's 504 Plan throughout the 2014-2015 school year, and the District failed to reevaluate him prior to initiating a significant change in placement when it failed to hold a manifestation determination meeting when Alex was suspended for over ten days and when it failed to hold a 504 meeting before terminating his 504 Plan.

61. On January 6, 2017, the District entered a Resolution Agreement with the OCR to resolve the OCR's compliance concerns related to the implementation of Alex's 504 Plan.

62. The Resolution Agreement obligated the District to make several determinations concerning Alex's 504 Plan and its disciplinary measures including:

- Whether Alex was denied a FAPE during the 2013-2014 or 2014-2015 school years as the result of any failure to implement his 504 Plan.
- Whether Alex's misconduct on December 10, 2014, April 17, 2015, and/or May 6, 2015 was a manifestation of disability.
- If the District team determined Alex's misconduct was a manifestation of his disability, the District would expunge the resulting suspension records for the relevant incidents.

63. On May 1, 2017, the District's Director for Special Needs wrote a letter to Alex's mother on behalf of the District.

64. The Letter addressed the District's obligations in the Resolution Agreement to arrive at certain determinations:

1. The team determined that Alex was denied a Free and Appropriate Public Education during the schools [sic] years 2013-2014 and 2014-2015, as a result of the district's failure to implement his Section 504 Plan.
….
3. The team determined that Alex's misconduct on December 10, 2014 and April 17, 2015 was a manifestation of his disability….
…..
5. The district will expunge the suspension on December 10, 2014 and April 17, 2015 from Alex's suspension record.
6. The district will review Alex's cumulative file and ensure there is no documentation from the incident occurring on May 6, 2015.

**FIRST CLAIM FOR RELIEF**
(Education Discrimination Based on Disability
Section 504 of the Rehabilitation Act of 1973)

10

65. Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(a).

66. An organization that receives federal funds violates § 504 if it denies a qualified individual with a disability a reasonable accommodation that the individual needs in order to enjoy meaningful access to the benefits of public services.

67. Section 504 applies to public schools that receive federal financial assistance. 29 U.S.C. § 794(b)(2)(B).

68. Section 504 contains an implied private right of action for damages to enforce its provisions.

69. To prevail on a claim for damages under § 504, a plaintiff must show "deliberate indifference" on the part of the school.

70. Thus, a public school system is liable for damages for violating § 504 if it failed to provide a disabled student a reasonable accommodation he needed to enjoy meaningful access to the benefits of a public education, and did so with deliberate indifference.

71. A school acts with deliberate indifference if it (1) had knowledge that a harm to a federally protected right is substantially likely, and (2) failed to act upon that likelihood.

72. A plaintiff's showing there was a violation of one of the regulations implementing § 504 may establish denial of "meaningful access" under § 504, if such violation denied the plaintiff meaningful access to a public benefit.

73. Regulation 34 C.F.R. § 104.33(a) implements § 504, and it obligates "a public elementary or secondary education program or activity" to "provide a free appropriate public education to each qualified handicapped person…"

74. Additionally, 34 C.F.R. § 104.33(b)(1) requires a school district to provide "regular or special education and related aids and services that (i) are designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met and (ii) are based upon adherence to procedures that satisfy the requirements of" § 104.34 among others.

75. Regulation 34 C.F.R. § 104.35(d) requires "periodic reevaluation of students who have been provided special education and related services."

76. Regulation 34 C.F.R. § 104.36 provides "a public elementary or secondary education program or activity shall establish and implement, with respect to actions regarding the identification, evaluation, or educational placement of persons who, because of handicap, need or are believed to need special instruction or related services, a system of procedural safeguards that includes notice, an opportunity for the parents or guardian of the person to examine relevant records, an impartial hearing with opportunity for participation by the person's parents or guardian and representation by counsel, and a review procedure."

77. In Alex's circumstances, the District, Jeanne N. Koba, Jonathan Moore, Freddy Montoya, and Cynthia Bernacki violated 34 C.F.R. § 104.33(a) with their failure to provide him a free appropriate public education for the school years 2013-2014 and 2014-2015.

78. The District, Jeanne N. Koba, Jonathan Moore, Freddy Montoya, and Cynthia Bernacki violated 34 C.F.R. § 104.33(b)(1) with their failure to implement Alex's 504 Plan with the accommodations he needed to enjoy meaningful access to the benefits of a public education for the school years 2013-2014 and 2014-2015.

79. Defendant Brent Russell violated 34 C.F.R. § 104.33(b)(1) with his failure to implement Alex's 504 Plan with the accommodations he needed to enjoy meaningful access to the benefits of a public education for the school year 2014-2015, and in particular on May 6, 2015.

80. The District, Jeanne N. Koba, Jonathan Moore, Freddy Montoya, and Cynthia Bernacki violated 34 C.F.R. § 104.35(d) with their failure to reevaluate Alex's 504 Plan in March of 2014 or at any time thereafter.

81. The District, Jeanne N. Koba, Jonathan Moore, Freddy Montoya, and Cynthia Bernacki violated 34 C.F.R. § 104.36 with their failure to establish and implement a system of procedural safeguards to prevent their failures to provide Alex a FAPE, implement his 504 Plan, and reevaluate the Plan.

82. The Defendants' failures were done with deliberate indifference because they (1) had knowledge that harm to Alex's public education was substantially likely, and (2)

failed to act upon that likelihood.

83. The Defendants' violation of § 504 as it applied to Alex damaged him and his parent as Alex did not have the benefit of a public education for the school years 2013-2014 and 2014-2015.

84. The Defendants' violation of § 504 as it applied to Alex damaged him and his parent as Alex repeatedly and inappropriately received disciplinary referrals including at least 30 minor and 11 major disciplinary referrals resulting in 14.5 days of in-school suspension, 15 days of out-of-school expulsion during the school year 2014-2015, and physical assault on May 6, 2015.

85. The Defendants' violation of § 504 as it applied to Alex damaged him and his parent as it placed him in the classroom with Russell who assaulted Alex because of his disability.

**SECOND CLAIM FOR RELIEF**
(Education Discrimination Based on Disability
Title II of Americans with Disability Act)

86. Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131–12134 was modeled after § 504 of the Rehabilitation Act.

87. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

88. A public school system is liable for damages for violating Title II of the ADA if it

failed to provide a disabled student a reasonable accommodation they needed to enjoy meaningful access to the benefits of a public education, and did so with deliberate indifference.

89. A plaintiff's showing there was a violation of one of the regulations implementing § 504 may establish denial of "meaningful access" under Title II of the ADA, if such violation denied the plaintiff meaningful access to a public benefit.

90. In Alex's circumstances, Defendants violated Title II of the ADA with their deliberate indifference to comply with the regulations described previously and to provide him a free appropriate public education for the school years 2013-2014 and 2014-2015.

91. The Defendants' violation of Title II of the ADA as it applied to Alex damaged him and his parent as Alex did not have the benefit of a public education for the school years 2013-2014 and 2014-2015.

92. The Defendants' violation of Title II of the ADA as it applied to Alex damaged him and his parent as Alex repeatedly and inappropriately received disciplinary referrals including at least 30 minor and 11 major disciplinary referrals resulting in 14.5 days of in-school suspension, 15 days of out-of-school expulsion during the school year 2014-2015, and physical assault on May 6, 2015.

93. The Defendants' violation of Title II of the ADA as it applied to Alex damaged him and his parent as it placed him in the classroom with Russell who assaulted Alex because of his disability.

WHEREFORE, Plaintiffs demands judgment against Defendants on the Claims as follows:

A. For Plaintiffs' compensatory damages;

B. For Plaintiffs' costs incurred and accruing costs, and attorneys' fees; and

C. For such other and further relief as the Court may deem just and reasonable under the circumstances.

**RESPECTFULLY SUBMITTED** this 21st day of December, 2017.

By: /S/Jimmy Borunda
Jimmy Borunda
Attorney for Plaintiffs