IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Esther De La Fuente,<br><br>    Plaintiff,<br><br>v.<br><br>Roosevelt Elementary School District No. 66, et al.,<br><br>    Defendants. | No. CV-17-04732-PHX-DWL<br><br>**ORDER** |

## INTRODUCTION

This case involves troubling allegations of negligence by a school district when attempting to address the special needs of one of its students. In March 2013, a minor named A.D. was enrolled as a student in a school within the Roosevelt Elementary School District No. 66 ("the District"). Around that time, the District created a specialized education plan for A.D.—known as a "Section 504 plan"— in an attempt to provide an accommodation for his attention deficit hyperactivity disorder ("ADHD").

Unfortunately, it appears the District simply forgot to implement the Section 504 plan after it was created. This oversight went undetected for over two years, until a May 2015 incident in which A.D. had an altercation with one of his teachers in the classroom. In the aftermath of this altercation, A.D.'s mother, Esther De La Fuente ("Plaintiff"), filed a complaint with the United States Office of Civil Rights ("OCR"). This complaint, which was filed in June 2015, specifically addressed the District's failure to implement A.D.'s Section 504 plan. Although the District initially responded to the complaint by denying it

had ever created a Section 504 plan for A.D., it eventually changed course, acknowledged its failure to provide an appropriate education to A.D., agreed to expunge certain incidents from A.D.'s official disciplinary record, and also agreed to provide "compensatory/remedial" educational services to A.D., including extra tutoring.

In December 2017, Plaintiff filed this lawsuit, which seeks damages (both on her own behalf and on behalf of A.D.) for alleged violations of two different federal disabilities statutes. Now pending before the Court is a motion for summary judgment filed by the District and the individual Defendants (together, "Defendants"). (Doc. 77.) They seek summary judgment on four grounds: (1) Plaintiff failed to exhaust her administrative remedies before filing this suit; (2) Plaintiff's claims are barred by the statute of limitations; (3) Plaintiff is not entitled to recover damages for her own emotional distress in these circumstances; and (4) the official capacity claims against the individual Defendants are duplicative of the claims against the District. The motion is fully briefed and nobody has requested oral argument.[1]

As explained below, Plaintiff's claims are barred by the statute of limitations. This is an unfortunate outcome, because Plaintiff and A.D. are deserving of sympathy, but it is an outcome compelled by the facts and relevant case law. Accordingly, the Court will grant summary judgment to Defendants without considering their other three arguments.

**BACKGROUND**

I. <u>Legal Framework</u>

It's helpful to begin by briefly summarizing the relevant legal framework. Under the Individuals with Disabilities Education Act ("IDEA"), states receive federal funds in exchange for committing to furnish a free and appropriate public education ("FAPE") to

---

[1] Plaintiff filed some of her exhibits after the deadline to file her response. (Docs. 88, 88-1.) Her counsel noted that he "inadvertently failed" to file these exhibits with her response. (Doc. 88 at 2.) Defendants seem to object to the Court considering these documents, contending they "were not properly part of the summary judgment record at the time Defendants filed their Reply in Support of Defendants' Separate Motion for Summary Judgment." (Doc. 89.) This argument is unavailing. Because Plaintiff cited all of these documents in her Controverting Statement of Facts (Doc. 83), and copies of these documents were obviously in Defendants' possession at the time they filed their reply, Defendants were not prejudiced in any way by Plaintiffs' untimely filing. The Court will, thus, consider these documents in ruling on the motion for summary judgment.

all students with particular disabilities. *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 748 (2017). "[A] FAPE comprises 'special education and related services'—both 'instruction' tailored to meet a child's 'unique needs' and sufficient 'supportive services' to permit the child to benefit from that instruction." *Id.* at 748-49 (citations omitted). A school furnishes a FAPE by providing the child with an individualized education program ("IEP"), which "spells out a personalized plan to meet all of the child's 'educational needs.'" *Id.*; *see also* 20 U.S.C. § 1414(d).

Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, similarly protect the interests of students with disabilities. "Title II forbids any 'public entity' from discriminating based on disability," and an implementing regulation, 28 C.F.R. § 35.130(b)(7), "requires a public entity to make 'reasonable modifications' to its 'policies, practices, or procedures' when necessary to avoid such discrimination." *Fry*, 137 S. Ct. at 749. Likewise, Section 504 prohibits "federally funded 'program[s] or activit[ies]'" from discriminating based on disability, *id.* (citing 42 U.S.C. §§ 12131–12132; 29 U.S.C. § 794(a)), thereby "demanding certain 'reasonable' modifications to existing practices in order to 'accommodate' persons with disabilities," *id.* (citation omitted). "Like the IEP, a § 504 Plan is the mechanism for providing a FAPE under § 504." *Lauren G. ex rel. Scott G. v. W. Chester Area Sch. Dist.*, 906 F. Supp. 2d 375, 391 (E.D. Pa. 2012); *see also* 34 C.F.R. § 104.33(a) ("A recipient that operates a public elementary or secondary education program or activity shall provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap.").

II.     Factual Background

A.D. was enrolled as a student at Bernard Black Elementary School within the District from 2010 through May 19, 2015, at which time he was "promoted to 9th grade" and no longer enrolled in the District. (Doc. 77 at 40.)

In February and March 2013, the District evaluated A.D. under Section 504. (Doc. 84 at 1-13.) The District determined that A.D.'s ADHD "adversely impact[s] his ability to

receive instruction and consequences which impacts his learning" and "impact[s] his ability to function in the general education setting without accommodations." (*Id.* at 6.) Consequently, on March 8, 2013, the District provided A.D. with a Section 504 plan. (*Id.* at 9.) The accommodations provided in this plan included: (1) "[s]horten[ing] homework assignments"; (2) "[t]esting in small group or 1:1 instruction"; (3) [n]ursing [s]ervices for [d]aily [m]edication [a]dministration"; (4) "[p]rovid[ing] intermittent (chunk) longer projects/assignments to ensure completion"; and (5) using a "[p]oint sheet." (*Id.*) The Section 504 plan also included a "Projected Re-Evaluation Date" of March 8, 2014, one year later. Plaintiff received a copy of the Section 504 Plan. (Doc. 85 at 10.)

In May 2015, A.D. had an altercation with one of his teachers in the classroom. (Doc. 77 at 17-27.) A.D. had also had several minor and major disciplinary infractions before that altercation. (Doc. 88-1 at 1.)

On June 16, 2015, Plaintiff filed a complaint with OCR alleging, among other things, that the District had failed to implement the Section 504 plan from March 2013 until May 2015. (Doc. 77 at 29.) OCR opened an investigation in response to the complaint. (*Id.* at 29-30.)

On July 31, 2015, the District submitted its "position statement and response to [OCR's] data request." (Doc. 88-1 at 1-7.) In this document, the District contended A.D. "ha[d] not had a Section 504 plan during his attendance at the District" and that A.D. "ha[d] never been classified as disabled by the District." (*Id.*) Moreover, after the District's counsel was informed that OCR had a copy of the Section 504 plan, the District again contended, in a September 3, 2015 letter, that "[a]fter a thorough search, the District ha[d] been unable to verify the existence or authenticity of that plan." (*Id.* at 8.)

On January 6, 2017, the District entered in a Resolution Agreement to resolve the issues identified in the OCR investigation. (Doc. 88-1 at 11.) The Resolution Agreement provided for individual relief for A.D. in the form of (1) determining whether A.D. was denied a FAPE for the 2013-2014 and 2014-2015 school years and the proper remedies for such denial and (2) determining whether A.D.'s episodes of misconduct during those

school years were manifestations of his disability. (*Id.* at 11-12.) It also provided for systemic relief in the form of (1) reviewing the District's Section 504 practices, (2) training employees on Section 504, (3) documenting the District's compliance with Section 504 for the remainder of the school year and at least the following two school years, and (4) providing training to "interested District community members" on Section 504. (*Id.* at 12-18.)

On February 8, 2017, OCR sent the District a letter laying out its investigative findings. (Doc. 85 at 27-31.) The letter noted the existence of the Section 504 plan and the District's awareness of it despite the District's repeated claims of its nonexistence. (*Id.*; Doc. 83 ¶ 17.) It further noted that the District acknowledged A.D. had never been reevaluated. (Doc. 85 at 29.)

On April 28, 2017, the District held a meeting with Plaintiff regarding the individual relief provided for in the Resolution Agreement. (Doc. 88-1 at 19.)

On May 1, 2017, the District sent Plaintiff a letter listing the outcomes of that meeting. (*Id.*) Those outcomes included: (1) a determination that A.D. was denied a FAPE during the 2013-2014 and 2014-2105 school years as a result of the District failing to implement his Section 504 plan; (2) a determination that A.D. was entitled to "compensatory/remedial services" in the form of tutoring during summer and fall 2017; (3) a determination that two episodes of A.D.'s misconduct were a manifestation of his disability; (4) a determination that A.D. was entitled to "compensatory/remedial services . . . for the services not provided as a result of his suspensions" for the two episodes of misconduct that were a manifestation of his disability; (5) expungement of the two suspensions from A.D.'s suspension record; and (6) a review of A.D.'s cumulative file to ensure it did not contain any documentation from the May 2015 altercation with the teacher. (*Id.*)

III. Procedural History

On December 21, 2017, Plaintiff filed this lawsuit on behalf of herself and A.D. (Doc. 1.)

On June 7, 2018, Plaintiff filed her second amended complaint ("SAC"). (Doc. 57.) The SAC includes two claims: (1) education discrimination in violation of Section 504 of the Rehabilitation Act and (2) education discrimination in violation of Title II of the ADA. (*Id.*) Plaintiff seeks compensatory damages for herself and A.D., costs, and attorneys' fees. (*Id.*)

**LEGAL STANDARD**

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). "If . . . [the] moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103.

"Summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). "A genuine dispute of material fact exists if 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *United States v. JP Morgan Chase Bank Account No. Ending 8215 in Name of Ladislao V. Samaniego, VL: $446,377.36*, 835 F.3d 1159, 1162 (9th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). The court "must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inference in the nonmoving party's favor." *Rookaird*, 908 F.3d at 459. Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## ANALYSIS

Defendants argue, and Plaintiff does not dispute, that a two-year statute of limitations applies to the claims in this case.[2] Accordingly, the Court will apply a two-year statute of limitations to Plaintiff's Rehabilitation Act and ADA claims.

Although "state law determines the period of limitations, federal law determines when a cause of action accrues." *Alexopulos v. San Francisco Unified Sch. Dist.*, 817 F.2d 551, 555 (9th Cir. 1987). "Under federal law a cause of action accrues, and the statute of limitations begins to run, when a plaintiff knows or has reason to know of the injury that is the basis of the action." *Id.*

Plaintiff argues the statute of limitations on her claims did not begin running until 2017 (when OCR completed its investigation and/or the District agreed to the Resolution Agreement) because, before then, the District hadn't acknowledged the existence of the Section 504 plan and its duty to implement it. (Doc. 82 at 12-14.) In response, Defendants argue that Plaintiff's "claims accrued on or before June 16, 2015" because, by that time, Plaintiff had already been given a copy of that Section 504 plan (which was developed in March 2013), had already become suspicious the Section 504 hadn't been implemented (which occurred following the May 2015 altercation with the teacher), and had just filed a complaint with OCR pertaining to the District's failure to implement the Section 504 plan. (Doc. 87 at 2-3.)

The Court agrees with Defendants that Plaintiff had reason to know of the injury by June 16, 2015, which is the date on which OCR "received a complaint alleging [the District] discriminated against [A.D.] on the basis of disability . . . by failing to . . .

---

[2] Where a federal statute does not contain a statute of limitations, "the court must apply the statute of limitations of the most analogous state law." *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1137 n.2 (9th Cir. 2002). Other courts have concluded that a two-year statute of limitations applies to claims brought in federal courts in Arizona under Section 504 of the Rehabilitation Act and Title II of the ADA. *Oskowis v. Sedona Oak-Creek Unified Sch. Dist. #9*, 2017 WL 1135558, *3 (D. Ariz. 2017); *Payne v. Arpaio*, 2009 WL 3756679, *10 (D. Ariz. 2009).

- 7 -

implement his Section 504 plan from March 2013 until May 2015." (Doc. 77 at 29.) Although Plaintiff may not have been certain of the claims on that date, she had reason to know of them, given that she had a copy of the Section 504 plan (Doc. 83 ¶ 4) and suspected the District had not been complying with that plan (*id.* ¶¶ 8-10), leading her to file the OCR complaint.

The Ninth Circuit's decision in *Stanley v. Trustees of California State Univ.*, 433 F.3d 1129 (9th Cir. 2006), compels the conclusion that June 16, 2015 is the relevant accrual date in this case. In *Stanley*, a university student was subjected to sexual harassment by one of her professors between 1999 and May 2000. *Id.* at 1132. In April 2001, after learning the school hadn't disciplined the professor, the student "filed a claim with the California State Board of Control." *Id.* Finally, in May 2002, after failing to receive a response to this claim, the student filed a federal lawsuit. *Id.* The district court dismissed the lawsuit, concluding it was filed outside the one-year statute of limitations, and the Ninth Circuit affirmed, holding that the student's claim necessarily accrued no later than the date on which she filed her claim with the state regulatory agency:

> It is unnecessary to determine exactly when Stanley had notice, because she certainly had reason to know of the injury upon which her action was based when she filed a complaint alleging virtually identical claims with the State Board of Control on April 27, 2001. . . . Thus, as a matter of law, Stanley had "reason to know" of her claim by at least April 27, 2001. Because she did not file her first action in district court until May 23, 2002, her claim is time-barred under the applicable one-year statute of limitations.

*Id.* at 1136. Here, similarly, Plaintiff necessarily had "reason to know" of her claims at the time she filed the OCR complaint in June 2015, so this lawsuit—which wasn't filed until two-and-a-half years later—is time-barred.[3]

Plaintiff also argues the statute of limitations is subject to equitable tolling because "[t]he District initially told [Plaintiff] and the OCR that it had no records of a 504 Plan

---

[3] *See also Little v. State*, 240 P.3d 861, 864-65 (Ariz. Ct. App. 2010) ("By authorizing and knowing about the filing of the Board complaint . . . Little demonstrated that, as of that time, her knowledge, understanding, and acceptance in the aggregate provided sufficient facts to constitute a cause of action.") (citations and internal quotation marks omitted).

because A.D. never had a 504 Plan, and thus, it could not have failed to implement a plan that never existed." (Doc. 82 at 15-16.) In response, Defendants argue that equitable tolling is unavailable because Plaintiff "had actual and constructive notice of the facts underlying her claim," given that she already had a copy of the Section 504 plan and had been at the Section 504 meeting and signed the plan. (Doc. 87 at 3.)

As an initial matter, the Court agrees with Plaintiff that equitable tolling is potentially available here. "In the absence of a federal statute of limitations, federal courts borrow not only the applicable state statute, but also the rules for its tolling, unless to do so would be inconsistent with the federal policy underlying the cause of action under consideration." *Alexopulos*, 817 F.2d at 555 (citations and internal quotation marks omitted). There is no reason to think applying equitable tolling to Title II and Section 504 claims would be inconsistent with the federal policy underlying these causes of action.

However, on the merits, Plaintiff is not entitled to equitable tolling. The Arizona Court of Appeals has stated that equitable tolling may be available where a defendant's "affirmative acts of fraud or concealment have misled a person from either recognizing a legal wrong or seeking timely legal redress." *Porter v. Spader*, 239 P.3d 743, 747 (Ariz. Ct. App. 2010); *see also Anson v. Am. Motors Corp.*, 747 P.2d 581, 587 (Ariz. Ct. App. 1987) (noting that the relevant inquiry for tolling based on fraudulent concealment is "whether the defendant has wrongfully concealed facts giving rise to the cause of action in such a manner as to prevent a plaintiff from reasonably discovering a claim exists within the limitations period"). Similarly, the Arizona Supreme Court has noted that "[t]he statute is never triggered until the injury manifests itself; fraudulent concealment occurs with nondisclosure of the facts pertaining to negligence." *Walk v. Ring*, 44 P.3d 990, 999 (Ariz. 2002).

These standards aren't satisfied here. This is unlike a negligence case in which the injury is only apparent after the defendant's affirmative disclosures. By the time Plaintiff filed her OCR complaint in June 2015, she was already aware (or, at a minimum, had "reason to know") that the District hadn't implemented A.D.'s Section 504 plan.

Therefore, the District's protestations of its nonexistence (during the early stages of the OCR proceedings) could not have concealed the injury or misled Plaintiff from recognizing the legal wrong.

Accordingly, **IT IS ORDERED** that:

1. Defendants' motion for summary judgment (Doc. 77) is **granted**; and
2. The Clerk of Court shall enter judgment accordingly.

Dated this 30th day of May, 2019.

_____
Dominic W. Lanza
United States District Judge